UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELMA THOMAS AND LENFORD THOMAS, Her Spouse,<br><br>Plaintiffs,<br><br>v.<br><br>BJ'S WHOLESALE CLUB, INC., WATCHUNG UE LLC A/K/A URBAN EDGE PROPERTIES, JOHN DOES 1-10 (Fictitious names representing unknown corporation, partnerships and/or limited liability companies or other types of legal entities),<br><br>Defendants. | **NOTICE OF REMOVAL**<br><br>**CIVIL ACTION NO.:**<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT BJ'S WHOLESALE CLUB, INC.'S NOTICE OF REMOVAL

Defendant BJ's Wholesale Club, Inc. (hereinafter referred to as "BJ's" or "Defendant") files this Notice of Removal pursuant to 28 U.S.C. §1441(a) and (b) to remove this action from the Superior Court of New Jersey, Law Division, Middlesex County, where it is now pending, to the United States District Court for the District of New Jersey.  Defendant, in support thereof, states as follows:

1. On or about July 26, 2019, Plaintiffs Elma Thomas and Lenford Thomas (hereinafter collectively referred to as "Plaintiffs") commenced this action by filing a Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, docket number MID-L-5518-19.  A copy of Plaintiffs' Complaint is attached hereto as Exhibit "A."

2. The allegations in Plaintiff's Complaint arise out of an alleged incident that occurred on July 29, 2018, while Plaintiff  Elma Thomas was inside of  BJ's Wholesale Club No. 073

located at 1601 Route 22, Watchung, NJ ("Property"). See Ex. "A", First Count, ¶1. On that date, Plaintiff Elma Thomas claims that she suffered injuries in the Seasonal Department while lifting a piece of patio furniture that BJ's offered for sale. See BJ's General Liability (Incident) Claim Report, as Exhibit "B".

3. Specifically, Plaintiff Elma Thomas claims that while she was lifting a piece of patio furniture, a tabletop that BJ's was offering for sale slid and hit her in the chest. Id.

4. At all relevant times, including the date of alleged incident, Defendant BJ's Wholesale Club, Inc. leased the BJ's Wholesale Club from Defendant Watchung UE LLC c/o Urban Edge Properties, under a Triple Net Lease. See Triple Net Lease, as Ex. "C"[1].

5. Pursuant to the Triple Net Lease, on July 29, 2018, Defendant Watchung UE LLC c/o Urban Edge Properties had no responsibility for the interior of BJ's Wholesale Club No. 073, **including relating to the products in the Seasonal Department where Plaintiff Elma Thomas's alleged incident occurred**. See Ex. "C", ¶ 7.01-7.02, 19.11(c), et. seq.

6. Triple Net Leases create a contract where the tenant has exclusive possession of the property and the landlord clearly delegates its duties of liability substantially to the tenant. Geringer v. Hartz Mountain Development Corp., 388 N.J.Super. 392, 400 (App. Div. 2006).

7. When the tenant's exclusive possession is combined with clear and unambiguous language in the lease that the tenant shall have the duty to maintain and repair the property, then the landlord cannot be held liable for any personal injuries sustained by a third party on that property. McBride v. Port Authority of New York and New Jersey, 295 N.J.Super. 521, 522 (App. Div. 1996).

8. Pursuant to the Triple Net Lease, the interior of BJ's Wholesale Club No. 073, including the Seasonal Department where Plaintiff Elma Thomas's alleged incident occurred was at

---

[1] This Triple Net Lease was assigned to BJ's Wholesale Club, Inc. The Assignment of Lease is also attached as Ex."C".

23835948.v1

2

all times material hereto maintained and operated by Defendant BJ's Wholesale Club, Inc. See Ex. "C".

9. Defendant Watchung UE LLC c/o Urban Edge Properties was fraudulently joined to prevent removal to Federal Court.

10. Defendant BJ's Wholesale Club, Inc. was served on July 31, 2019, which is within thirty days of the filing of this Notice of Removal; thus, removal is timely.

11. For the reasons set forth more fully below, this Court has original jurisdiction over the subject matter under 28 U.S.C. §1332 because the properly joined parties are citizens of different states and the matter in controversy exceeds $75,000.

## A. PLAINTIFFS ARE DIVERSE FROM THE PROPERLY JOINED DEFENDANT

12. Plaintiffs allegedly reside at 381 Rushmore Avenue, Piscataway, New Jersey, 08854. See Exhibit "A", p.1.

13. Defendant BJ's Wholesale Club, Inc. is a Delaware Corporation with its principal place of business located in Westborough, Massachusetts.

14. At all relevant times, including the date of alleged incident, Defendant BJ's Wholesale Club, Inc. leased the BJ's Wholesale Club from Defendant Watchung UE LLC c/o Urban Edge Properties, under a Triple Net Lease[2]. See Ex. "C".

15. As stated above, Plaintiffs named Defendant Watchung UE LLC c/o Urban Edge Properties as an individual Defendant in this matter. See Exhibit "A".

16. Defendant Watchung UE LLC c/o Urban Edge Properties did not maintain or operate the interior of BJ's Wholesale Club No. 073, including the Seasonal Department where Plaintiff Elma Thomas's alleged incident occurred. See Ex. "C", ¶ 7.01-7.02, 19.11(c), et. seq.

---

[2] According to New Jersey law, a commercial lease is "triple-net" when the tenant is required to pay the "utilities, taxes and other charges associated with the property." N.J. Indus. Properties v. Y.C. & V.L., Inc., 100 N.J. 432, 434 (1985).

23835948.v1

3

17. Nonetheless, Plaintiffs alleges in the Complaint that Defendant Watchung UE LLC c/o Urban Edge Properties was negligent or responsible for Plaintiff Elma Thomas' accident for failure to maintain or inspect the property located at located at 1601 Route 22, Watchung, NJ.  See Ex. "A", Counts 1-2.

18. Plaintiffs also allege that Watchung UE LLC c/o Urban Edge Properties is liable to them for Negligent Hiring and Supervision of the employees at 1601 Route 22, Watchung, NJ and that they are responsible for Plaintiff's accident as a result of Respondeat Superior. See Ex. "A", Counts 3-4.

19. However, pursuant to the Triple Net Lease, Defendant Watchung UE LLC c/o Urban Edge Properties was not responsible for the maintenance or operation of the interior of BJ's Wholesale Club No. 073 including the hiring of BJ's personnel whom were present in BJ's Wholesale Club No. 073 on July 29, 2018.  See Ex. "C", ¶ 7.01-7.02, 19.11(c), et. seq.

20. New Jersey has carved out some exceptions to the general principles of negligence, including in the commercial tenancy context.  There is **no landlord liability for personal injuries suffered by a third person on the leased premises due to a lack of proper maintenance or repair,** when the lease unquestionably placed responsibility for such maintenance or repair solely on the tenant."  Geringer v. Hartz Mountain Development Corp., 388 N.J.Super. 392, 401 (App. Div. 2006) citing McBride v. Port Authority of New York and New Jersey, 295 N.J.Super. 521, 522 (App. Div. 1996).

21. When the tenant remains in "**exclusive possession**" and the terms of the lease are **unambiguous** as to repair and maintenance, then the landlord is not liable for the personal injuries of third persons.  McBride, supra, 295 N.J.Super. at 521.

22. This exception is applied to commercial Triple Net Leases, wherein the tenant is responsible for "paying utilities, taxes and other charges associated with the property." N.J. Indus. Properties v. Y.C. & V.L., Inc., 100 N.J. 432, 434 (1985).

23. Triple-net leases create a contract where the tenant has exclusive possession of the property and the landlord clearly delegates its duties of liability substantially to the tenant. <u>Geringer v. Hartz Mountain Development Corp.</u>, 388 N.J.Super. 392, 400 (App. Div. 2006).

24. When the tenant's exclusive possession is combined with clear and unambiguous language in the lease that the tenant shall have the duty to maintain and repair the property, then the landlord cannot be held liable for any personal injuries sustained by a third person on that property. <u>McBride v. Port Authority of New York and New Jersey</u>, 295 N.J.Super. 521, 522 (App. Div. 1996).

25. Here, Plaintiff makes claims against Defendant Watchung UE LLC c/o Urban Edge Properties related to their alleged negligence in the custody and control over the interior of BJ's Wholesale Club No. 073, where the alleged incident occurred. <u>See</u> Ex. "A".

26. However, pursuant to the Triple Net Lease, the interior of BJ's Wholesale Club No. 073, including the Seasonal Department where Plaintiff Elma Thomas's alleged incident occurred was at all times material hereto maintained and operated by Defendant BJ's Wholesale Club, Inc., as follows:

> ARTICLE VII. REPAIRS, ALTERATIONS, COMPLIANCE, SURRENDER.
>
> Section 7.01. Repairs by Landlord:
>
> Landlord shall have no obligation to make repairs to the Demised Premises.
>
> Section 7.02. Repairs and Maintenance by Tenant:
>
> Tenant shall make all repairs to the Demised Premises necessary or desirable to keep the Demised Premises in a state of repair consistent with legal requirements and Insurance Requirements and in a safe and neat condition.

<u>See</u> Ex. "C", ¶ 7.01-7.02.

27. The Lease also indicates that the Landlord shall have no liability for any damage to any person caused by any fixtures or equipment or appurtenances whatsoever at the Demised Premises, or for any damages arising from any act or neglect or arising by reason of the use of, or any defect in the Club or any of the fixtures, equipment or appurtenances

contained within, or by the act or neglect of any other person or caused in any other manner whatsoever, as follows:

> Section 19.11.  Liability of Landlord:
>
> (c)   All property (whether real, personal or mixed) at any time located in or upon the Demised Premises shall be at the risk of the Tenant only, and Landlord shall not become liable for any damage to said property or to Tenant, or to any other person or property, caused by water leakage, steam, sewerage, gas or odors or for any damage whatsoever done or occasioned by or from any boiler, plumbing, gas, water, steam or other pipes, or any fixtures or equipment or appurtenances whatsoever, or for any damage arising from any act or neglect or arising by reason of the use of, or any defect in, the Demised Premises or any of the fixtures, equipment or appurtenances therein contained, or by the act or neglect of any other person or caused in any other manner whatsoever.

See Ex. "C", ¶ 19.11(c).

28. Moreover, the Triple Net Lease is clear that BJ's, as Tenant, is required to pay taxes and other fees/costs related to the Property, as follows:

> Section 9.03.  Store Operations:
>
> (a)   INTENTIONALLY OMITTED.
>
> (b)   Keeping Demised Premises Clean:  Tenant shall keep the Demised Premises, including exterior and interior portions of all windows, doors and all other glass, in neat and clean condition.
>
> (c)   Paying Taxes:  Tenant shall pay before delinquency any and all taxes, assessments and public charges levied, assessed or imposed upon Tenant's business or upon Tenant's fixtures, furnishings or equipment in the Demised Premises.
>
> (d)   Paying License Fees:  Tenant shall pay promptly all license fees, permit fees and charges of a similar nature for the conduct by Tenant or any subtenant of any business or undertaking authorized hereunder to be conducted in the Demised Premises.
>
> (e)   Exclusive Delivery Facilities and Sidewalks:  Tenant shall keep and maintain in good order, condition and repair any loading platform, truck dock or truck maneuvering space which is used by Tenant or to which Tenant has the right of exclusive use.  Tenant shall remove snow and ice from the sidewalk(s) adjacent to the Demised Premises and spread sand or other abrasive substances thereon as conditions require.
>
> (f)   Garbage:  Tenant agrees not to permit the accumulation (unless in concealed metal containers at a location reasonably acceptable to Landlord) or burning of any rubbish or garbage in, on or about any part of the Shopping Center.  Tenant shall pay all costs and expenses for such disposal and collection.  Tenant shall keep the sidewalk(s) and curbs adjacent to the Demised Premises free of debris.
>
> (g)   Restrictive Covenants:  Tenant agrees that it will comply with and observe all restrictive covenants currently of record which affect or are applicable to the Shopping Center, the Demised Premises and the Common Area.

Id. at p.18, ¶ 9.03.

29. Additionally, the Triple Net Lease is clear that BJ's, as Tenant, is required to pay utilities at the Property, as follows:

> ARTICLE VIII. SERVICE AND UTILITIES.
>
> Section 8.01. Electricity:
>
> Tenant shall, as part of Tenant's Work, install an electric meter to measure electricity consumed at the Demised Premises and shall perform such other work as shall be necessary so that consumption of electricity at the Demised Premises shall be measured separately. Tenant shall make its own arrangements with the utility company supplying electricity for that service. Commencing at Delivery of Possession, Tenant shall pay for all electrical service and charges relating to the Demised Premises and Tenant's signs.
>
> Section 8.02. Gas Service:
>
> If Gas Service is available to the Demised Premises and if Tenant shall desire to use such service, Tenant shall install a gas meter to measure gas consumed at the Demised Premises and shall perform such other work as shall be necessary so that consumption of gas at the Demised Premises shall be measured separately. Tenant shall make its own arrangements with the utility company supplying gas for that service. Tenant shall pay for all gas service and charges relating to the Demised Premises.
>
> Section 8.03. Water:
>
> Tenant shall, as part of Tenant's Work, install a water meter to measure water consumed at the Demised Premises and shall perform such other work as shall be necessary so that consumption of water at the Demised Premises shall be measured separately. Tenant shall pay to Landlord its "equitable share" of the cost of water consumed in the Shopping Center based upon the actual consumption of water at the Demised Premises, as shown on such meter. Payments shall be due within ten (10) days after a bill is rendered. Notwithstanding the foregoing, if permitted by the water company, Tenant may make payments directly to the water company for water consumed at the Demised Premises. If any sewer or water rent, charge, tax or levy is imposed against the Shopping Center, Tenant shall pay its equitable share thereof within ten (10) days after Landlord renders a bill therefor. Tenant shall pay for water and said sewer or water rent, charge, etc. commencing at Delivery of Possession.
>
> Section 8.04. Heat, Hot Water, Air-Conditioning:
>
> Landlord shall not be required to supply heat, hot water or air-conditioning to the Demised Premises. Tenant shall supply its own requirements of heat, hot water and air-conditioning.

See Ex. "C", p. 16, ¶¶ 8.01 - 8.04

30. There are also indemnity provisions in the Lease. See Ex. C. ¶¶ 14.01, and 9.07(b).

31. Again, under McBride, *Supra*, when the tenant's exclusive possession is combined with clear and unambiguous language in the lease that the tenant shall have the duty to maintain and repair the property, then the landlord cannot be held liable for any personal injuries sustained by a customer of the tenant on that property. McBride, 295 N.J.Super. 521, 522 (App. Div. 1996).

32. Based on the terms of the Triple Net Lease, the facts surrounding the happening of the alleged incident, and the black letter law indicating that where there is a Triple Net Lease, the landlord cannot be held liable for any personal injuries sustained by a third person on

that property, Plaintiff simply cannot sustain a cause of action against Watchung UE LLC c/o Urban Edge Properties under New Jersey law.

33. This is especially so, when this Court shall consider the manner in which how this alleged incident occurred, i.e.: Plaintiff Elma Thomas claims that she suffered injuries in the Seasonal Department while lifting a piece of patio furniture that BJ's offered for sale. See Ex. "B".

34. Defendant Watchung UE LLC c/o Urban Edge Properties was fraudulently joined solely to destroy diversity and prevent removal to federal court.

35. Accordingly, Plaintiff is diverse from BJ's Wholesale Club, Inc.

36. "The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." In re Briscoe, 448 F.3d 201, 215-216 (3d Cir. 2006).

37. "In a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." Briscoe, 448 F.3d at 216.

38. In matters where the Court determines that joinder was fraudulent, the Court can disregard, for jurisdictional purposes, the citizenship of a non-diverse defendant. In re Briscoe, 448 F.3d 201, 215 (3d Cir. 2006).

39. When a non-diverse party is fraudulently joined, "the citizenship of that defendant may be ignored and the action may be removed." American Dredging Co. v. Atlantic Sea Con, LTD., 637 F. Supp. 179, 183 (D.N.J. 1986).

40. Fraudulent joinder does not require a showing of fraud. Id.

41. The standard for determining when a party is fraudulently joined is "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." Id.

42. Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).

43. As stated above, Plaintiff claims that she suffered injuries in the Seasonal Department of BJ's Club number 073 while lifting a piece of patio furniture that BJ's offered for sale. See Ex. "A" and "B".

44. As set forth at length above, based on the terms of the Triple Net Lease, the facts surrounding the happening of the alleged incident, and the black letter law indicating that where there is a Triple Net Lease, the landlord cannot be held liable for any personal injuries sustained by a customer of the tenant on that property, Plaintiff simply cannot sustain a cause of action against Watchung UE LLC c/o Urban Edge Properties.

45. The standard for determining when a party is fraudulently joined is "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." American Dredging Co. v. Atlantic Sea Con, LTD., 637 F. Supp. 179, 183 (D.N.J. 1986).

46. Although fraudulent joinder determinations are often made in the context of a remand motion, there is no requirement that this be so, where the fraudulent joinder issue is raised and briefed by the removing party in the removal petition itself, and because this Court has the authority to determine its own jurisdiction without necessity of formal motion practice under Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1447(c).

47. Therefore, under <u>American Dredging Co.</u>, *Supra*, Defendant Watchung UE LLC c/o Urban Edge Properties' inclusion in this lawsuit does not destroy diversity of citizenship.

48. To any extent it is necessary, Defendant Watchung UE LLC c/o Urban Edge Properties has given BJ's consent to remove this matter to the Federal Court. <u>See</u> Ex. "D".

49. Accordingly, Plaintiff is diverse from the properly joined Defendant, and the requirements for removal based on diversity of citizenship are satisfied.

### B. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 EXCLUSIVE OF INTEREST AND COSTS

50. The State Court wherein this action was originally filed is located in Middlesex County, New Jersey, which is embraced within this jurisdictional district.

51. Removal from the Superior Court of New Jersey Law Division, Middlesex County is proper under 28 U.S.C. §§1441(a) and (b), which authorizes the removal of any civil action of which the District Courts of the United States has original jurisdiction and if "none of the parties in interest properly joined and served as a defendant is a citizen of the state in which such action is brought."

52. This Court has original jurisdiction over the subject matter under 28 U.S.C. §1332 as the parties in interest properly joined and served are citizens of different states, and the matter in controversy exceeds $75,000.00 as set forth below.

53. Plaintiff claims that as a result of the recklessness and negligence of the Defendants, she suffered severe and permanent injuries, great pain and suffering to her body and mind, has incurred great sums of money for medical care, and has sustained lost earnings and lost earning capacity. <u>See</u> Ex. "A", First Count, ¶5.

54. Plaintiff Lenford Thomas, spouse of Plaintiff Elma Thomas, claims that as the proximate result of the injuries his spouse sustained in the accident, he sustained a loss of her services, consortium and companionship. <u>See</u> Exhibit "A," Sixth Count, ¶3.

55. Plaintiffs demand judgment against Defendant for damages, interest, costs of suit as well as compensatory damages, **exemplary damages**, attorney's fees and **punitive damages**, as follows:

> WHEREFORE, the Plaintiff Elma Thomas demands judgment against the Defendants BJ's Wholesale Club, Inc., Urban Edge Properties, John Does 1-10 and/or XYZ Corps. 1-10 for compensatory damages, punitive damages and exemplary damages together with interest, attorney fees and costs of suit.

See Exhibit "A," at Wherefore Clauses.

56. On August 2, 2019, in order to clarify the amount of damages at issue, BJ's served Plaintiffs with a stipulation to limit damages to $75,000.00, and advised that if it was not signed and returned, BJ's would remove this matter to the Federal Court thereafter. See August 2, 2019 correspondence from Defendant's counsel to Plaintiffs' counsel, attached as Exhibit "E."

57. Subsequent to that, on August 7, 2019, counsel for Plaintiff advised counsel for BJ's that Plaintiff would not agree to sign the Stipulation to Limit damages to $75,000. See Exhibit "F".

58. As such, based on Plaintiff Elma Thomas' severe personal injury claims, lost earning and earning capacity claims, punitive and exemplary damages claims, as well as the loss of consortium claim, coupled with Plaintiff's refusal to stipulate to limit damages to $75,000, it is Defendant's position that Plaintiffs are seeking an amount in excess of $75,000 and this Court does not have to guess as to whether this Court's jurisdictional threshold has been met.

59. A defendant's notice of removal need only include a "plausible allegation" the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(a)).

60. This Notice of Removal is timely as it is being filed within thirty days of service of Plaintiffs' Complaint on Defendant BJ's.

61. The United States District Court for the District of New Jersey is in the federal judicial district encompassing Middlesex County, New Jersey, where the State Action was filed. For purposes of removal, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

62. Prompt written notice of this Notice of Removal is being sent to Plaintiffs and Defendant Watchung UE LLC c/o Urban Edge Properties through their counsel, and a copy of this Notice of Removal will be filed with the Superior Court of New Jersey, Middlesex County, as required by 28 U.S.C. § 1446(d).

63. Because the requirements for federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 are satisfied, *i.e.,* complete diversity of citizenship between Plaintiffs and the properly joined Defendant and the amount in controversy in excess of $75,000, this action is properly removable.

64. Pursuant to 28 U.S.C. § 1446(a), Defendant has attached copies of all process, pleadings and orders served upon them, including: A true and correct copy of Plaintiffs' Summons and Complaint.  See Exhibit "A."

**WHEREFORE**, Defendant BJ's Wholesale Club, Inc. respectfully requests that the State Action be removed from the Superior Court of New Jersey, Law Division, Middlesex County to the United States District Court for the District of New Jersey.

Dated: August 21, 2019                                s/ *John M. McConnell*
                                                                  John M. McConnell, Esq.
                                                                  Earyn J. Edwards, Esq.
                                                                  **GOLDBERG SEGALLA LLP**
                                                                  301 Carnegie Center Drive,
                                                                  Suite 200, Princeton, NJ 08540-6587
                                                                  609-986-1326
                                                                  609-986-1301 - Fax
                                                                  Attorneys for Defendant BJ's Wholesale Club, Inc.